IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03011-REB-MJW

HAWG TOOLS, LLC, a Colorado limited liability company,

Plaintiff,

v.

NEWSO INTERNATIONAL ENERGY SERVICES, INC.,
NEWSCO INTERATIONAL ENERGY SERVICES USA, INC., *a/k/a Newsco USA, Inc.*,
NEWSCO DIRECTIONAL & HORIZONTAL SERVICES, INC., and
JOE FICKEN, *an individual*,

Defendants.

## REPORT and RECOMMENDATION
on

### DEFENDANTS' FED. R. CIV. P. 12(b)(2) and (6) MOTION TO DISMISS
(Docket No. 46)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

In a previous state court case, Plaintiff won a jury verdict for trade secret misappropriation, conversion, and breach of contract, while losing on some other claims.  (Docket No. 46-3.)  Plaintiff also requested injunctive relief, but the trial court denied the request—suggesting that Plaintiff could instead bring a second suit for continuing damages.  (Docket No. 23-2.)  Plaintiff did so.  (Docket No. 3.)  Defendants removed this second suit to federal court, creating the case now at bar.  (Docket No. 1.)

Defendants move to dismiss certain claims and parties.  (Docket No. 46.)  District Judge Robert E. Blackburn referred the motion to the undersigned.  (Docket No. 47.)

The Court has reviewed the parties' filings (Docket Nos. 46, 49, 52, 56, & 59), taken judicial notice of the court's entire file in this case, and reviewed the relevant Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court hereby recommends that the motion be granted in part and denied in part.

## **LEGAL STANDARDS**

Defendants move to dismiss all claims against Defendant Newsco International Energy Services, Inc. ("NIESI") for lack of personal jurisdiction under Rule 12(b)(2). (Docket No. 46, pp. 2–5; Docket No. 49, pp. 1–4 & n.1.) Judge Blackburn states the analysis under Rule 12(b)(2) as follows:

> . . . The assumption of personal jurisdiction over a non-resident defendant on the basis of . . . diversity of citizenship involves a two-step inquiry. First, the defendant must be amenable to service of process under the forum state's long-arm statute. Second, the exercise of jurisdiction must comport with due process. Because the Colorado long-arm statute extends personal jurisdiction within the state as far as the federal constitutional requirements of due process permit, the analysis collapses into a single inquiry as to whether the requirements of due process are satisfied.
>
> Due process for jurisdictional purposes consists of two elements. First, the defendant must have sufficient "minimum contacts" with the forum state. "Minimum contacts" may be analyzed in terms of specific jurisdiction or general jurisdiction. Specific jurisdiction exists when the defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum, even if those contacts are unrelated to the pending litigation.
>
> Second, if sufficient minimum contacts exist, I must determine then whether the exercise of personal jurisdiction over the non-resident defendant would comport with "fair play and substantial justice." Stated differently, I must determine whether assuming personal jurisdiction over the defendant is "reasonable" in light of the circumstances surrounding the case. Factors relevant to that analysis include,

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.
>
> The weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.
>
> I have discretion to resolve the motion on affidavits and other written material. Plaintiff has the burden to establish a prima facie case of personal jurisdiction. I must accept the well-pleaded allegations of the First Amended Complaint as true. However, plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.

*Allison v. Wise*, 621 F. Supp. 2d 1114, 1117–18 (D. Colo. 2007) (internal quotation marks, alterations, citations, and footnote callout omitted).

Defendants also move to dismiss most of Plaintiff's claims as to all defendants under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. As Judge Blackburn has stated:

> For the purposes of resolving [a Rule 12(b)(6) motion], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint. When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. The Court may consider documents outside of the complaint on a motion to dismiss in three instances, however. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint.

*Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1057 n.8 (D. Colo. 2013) (internal citations omitted). The Court concludes that, under the second and third instances identified by

Judge Blackburn, each of the exhibits attached Defendants' motion (Docket Nos. 46-1, 46-2, & 46-3) and Plaintiff's response (Docket No. 49-1) may be considered at this stage without converting the motion into a summary judgment motion.

Defendants' Rule 12(b)(6) arguments challenge certain abstract legal questions rather than the factual sufficiency of the allegations, and the Court will therefore dispense with its usual recitation of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

## PLAINTIFF'S COMPLAINT

As alleged by the Amended Complaint (Docket No. 36), Plaintiff "is in the business of renting and supplying equipment for the production of oil and gas." (*Id.* ¶ 27.) From December 2008 to July 2011, Daniel Gallagher purchased a "Sealed Bearing Pack Design" and a "Wash Bearing Pack Design" from Defendant Ficken and a third party. (*Id.* ¶¶ 21–25.) Gallagher then contributed the Designs to Plaintiff, an LLC for which Gallagher was the sole member. (*Id.* ¶ 26.) Plaintiff "uses the Designs to manufacture, assemble, maintain and rent mud motors to various customers using them in the operation of oil and gas wells to produce oil and gas within the United States." (*Id.* ¶ 27.)

At some point after he sold the Designs to Plaintiff, Defendant Ficken began working for one or more of the other Defendants—NIESI, Newsco International Energy Services USA, Inc. ("Newsco USA"), or Newsco Directional & Horizontal Services, Inc. ("Newsco D&H") (collectively, the "Newsco Defendants"). (*Id.* ¶ 28.) An incident caused Plaintiff to suspect that the Newsco Defendants were using the Designs previously sold to Gallagher. (*Id.* ¶ 29.) Plaintiff investigated and determined that Defendants are

"utilizing the same design for sealed bearing packs and wash bearing packs which are owned by" Plaintiff. (*Id.* ¶ 30.) Defendants currently use "the Designs in [their] oil and gas production operations in North America, Russia, and other countries." (*Id.*)

In 2013, Plaintiff sued Defendants plus one other individual in Colorado state court. (*Id.* ¶ 31.) The case went to trial, and the jury returned a verdict for Plaintiff. (*Id.*) It returned a verdict of $1.3 million on Plaintiff's trade-secret claim; $45,000 on Plaintiff's conversion claim; and $45,000 on Plaintiff's contract claim against Ficken.[1] (*Id.*) After trial, Defendants moved for judgment notwithstanding the verdict on various theories, including lack of personal jurisdiction over NIESI and Newsco D&H; the motion was denied in its entirety. (*Id.* ¶¶ 32–36.)

Defendants continue to use the Designs, despite losing the state-court lawsuit. (*Id.* ¶ 37.) Plaintiff requested injunctive relief to prevent Defendants from doing so, but the state-court judge denied the request "based on his concern that the general jury verdict forms used did not allow the jury to identify which part of the Sealed Bearing Pack Design is a trade secret." (*Id.* ¶ 38.) The judge "also stated that there was nothing to prevent [Plaintiff] from filing an additional suit for ongoing damages." (*Id.*) Plaintiff thus filed the suit now before *this* Court, "seeking ongoing and future damages for the Defendants' use of the . . . Sealed Bearing Pack Design that has occurred after December 31, 2013." (*Id.* ¶ 39.) The Complaint makes five claims for relief:

- Continued misappropriation of trade secrets under the Colorado Uniform Trade Secret Act ("CUTSA"), C.R.S. § 7-74-101 *et seq.*, as to all Defendants, for which damages, exemplary damages, and injunctive relief are sought;

---

[1] The Amended Complaint doesn't mention it, but the jury also found *against* Plaintiff on certain counts, including Plaintiff's claim for civil theft. (Docket No. 46-3.)

- Civil theft under the Colorado Theft Statute, C.R.S. § 18-4-405, as to all Defendants, for which treble damages are sought;

- Breach of contract under a continuing breach theory, as to Defendant Ficken, for which damages are sought;

- Unjust enrichment, as to all Defendants, for which disgorgement of profits appears to be sought; and

- Declaratory judgment as to the effect of the prior litigation, as to all Defendants.

(*Id.* ¶¶ 41–70.)

## DISCUSSION

Defendants make four arguments for dismissal. First, they argue that Colorado courts lack personal jurisdiction over Defendant NIESI. Second, they argue that CUTSA displaces any application of the civil-theft statute or an unjust enrichment theory to the misappropriation of trade secrets. Third, Defendants argue that Colorado's civil-theft statute cannot apply to conduct taking place outside Colorado's territorial borders. Finally, they argue that Plaintiff's civil-theft claim is barred by res judicata.

**I.    Personal Jurisdiction**

Defendants argue that NIESI has no contacts with Colorado that would allow the courts of this state to exercise personal jurisdiction over it, and that the state court did not actually decide the question such that collateral estoppel would apply. In the alternative, Defendants argue that this lawsuit requires a new determination of personal jurisdiction based on the time frame since the original lawsuit.

*Res Judicata/Collateral Estoppel*

Defendants' argument as to preclusion is correct, up to a point: collateral estoppel does not apply. One of the elements of collateral estoppel is that the issue

7

must have been actually decided by the prior court. *See Concerning Application for Water Rights of Sedalia Water & Sanitation Dist. in Douglas Cnty.*, ___ P.3d ___, 2015 WL 525923, at *4 (Colo. 2015). That did not happen here. In the state court action, Defendants raised personal jurisdiction on both a motion to dismiss and a motion for summary judgment; both times the state court held that Plaintiff had shown enough to proceed and that disputes of fact prevented the court from finally deciding the question. (Docket No. 49-1, pp. 8–9.) But Defendants neglected to raise the challenge again at the close of evidence—and when they raised it in a post-trial motion, the state court held that they had not properly preserved it under Colorado law. (*Id.* (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192 & n.3 (Colo. 2005); *Gotteman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2007)).) Accordingly, the state court held that Defendants had waived the defense. The question was therefore never actually decided, and collateral estoppel does not apply.

But the relevant doctrine here isn't collateral estoppel (issue preclusion)—it's res judicata (claim preclusion). For purposes of res judicata, jurisdictional challenges are defenses that must be raised in the first court or forever lost. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706–07 (1982); WRIGHT & MILLER, 18A FED. PRAC. & PROC. JURIS. § 4430 (2d ed.) ("A defendant who appears to litigate the merits without properly preserving an objection to personal jurisdiction forfeits the right to raise the objection in the initial proceeding and is bound by the resulting judgment."). Courts routinely prohibit defendants who neglected to raise personal jurisdiction in the first action from raising it in the second, unless the first action ended in a default judgment. *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir. 2004) ("Indeed, as

long as a party had an opportunity to litigate the jurisdictional issue, it is not subject to collateral attack on that basis."). Similarly, a plaintiff who fails to establish personal jurisdiction on one theory will be barred by res judicata from trying again on a new theory. *Eaton v. Weaver Mfg.*, 582 F.2d 1250, 1256–57 (10th Cir. 1978).

Sitting in diversity, this Court must apply Colorado law on res judicata. Although this Court has been unable to find a case dealing with waiver of personal jurisdiction, the Colorado Supreme Court has held that a failure to challenge subject-matter jurisdiction will preclude a defendant from raising that question on collateral attack. *In re Water Rights of Elk Dance Colorado LLC*, 139 P.3d 660, 669–71 (Colo. 2006). The Court concludes that the Colorado Supreme Court would apply the same rule to personal jurisdiction. As a result, because Defendants litigated the merits of the prior action and (inadvertently) waived their challenge to personal jurisdiction, they may not raise personal jurisdiction in later litigation over the same claims.

### *Temporal Limitations on Personal Jurisdiction*

In the alternative, Defendants argue that even if some form of preclusion applies, it can apply only to the period of time actually litigated in state court—the period before December 31, 2013. Because this second lawsuit concerns damages and/or continuing misappropriation accruing after that date, Defendants argue, personal jurisdiction must be established anew—based on a current minimum-contacts analysis.

This temporal argument fails because of the type of personal jurisdiction at issue. If personal jurisdiction were asserted on a general-jurisdiction theory, based on the defendant being "at home" in Colorado, the current state of affairs would indeed be the dispositive question. But here, the Court's personal jurisdiction is premised on specific

jurisdiction—that is, based on the defendants' minimum contacts as they relate to the specific claims at issue.[2] There is no authority for the proposition that Colorado courts, having once had personal jurisdiction over NIESI *for purposes of these specific claims*, could then lose it. *See, e.g.*, *IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 161 (D. D.C. 2010) ("While it makes sense to analyze the temporal proximity of a defendant's contacts with the District in the context of [general personal jurisdiction] because the defendant's contacts must be '*continuous* and systematic,' [defendant] has presented no legal authority or rationale that supports doing the same for specific personal jurisdiction . . . ."); *Praetorian Specialty Ins. Co. v. Auguillard Const. Co.*, 829 F. Supp. 2d 456, 467–70 (W.D. La. 2010) (rejecting temporal limitations on specific, as opposed to general, personal jurisdiction). The Court therefore rejects this argument for overcoming the res judicata effect of the prior lawsuit, and recommends that the Rule 12(b)(2) portion of Defendants' motion be denied.

## II. CUTSA Displacement of Other Remedies

Defendants argue that Plaintiff's second and fourth claims for relief—civil theft and unjust enrichment—are barred by CUTSA, which provides:

> (1) Except as provided in subsection (2) of this section, this article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (2) This article does not affect:

---

[2] Defendants correctly point out that the Amended Complaint alleges a general personal jurisdiction theory. (Docket No. 36 ¶ 5.) But it also alleges minimum contacts specifically related to the claims at issue. (*See id.* ¶¶ 6–19 (conducting business in Colorado involving the use of misappropriated Designs).) And more importantly, it alleges facts showing that personal jurisdiction *as to these claims* is a matter of res judicata. (*Id.* ¶¶ 31, 35.)

10

> (a) Contractual remedies, whether or not based upon misappropriation of a trade secret;
>
> (b) Other civil remedies that are not based upon misappropriation of a trade secret; or
>
> (c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

C.R.S. § 7-74-108. This provision preempts other claims where they "are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996). It does not bar *every* claim arising from the same set of facts. "Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets," and further, "a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the UTSA." *Id.* In *Powell Products*, Judge Babcock explained the distinction as follows:

> Plaintiff's conversion claim is a good example of a claim that is, at least in part, preempted by the UTSA. In its conversion claim, plaintiffs allege that [defendants] stole trade secrets, mechanical drawings, blueprints, and specifications of the plaintiff's machine. To the extent that plaintiff's claim seeks recovery for defendants' misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets. If the design of the plaintiff's machine is not a trade secret, plaintiff has no property right in its design, and it therefore would have no claim. Alternatively, if the design is a trade secret, plaintiff's claim is preempted by the UTSA. Because plaintiff's claim also seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the UTSA, plaintiff's conversion claim is not entirely preempted.

*Id.* at 1474–75.

Plaintiff here argues that his civil-theft and unjust-enrichment claims are not preempted—or not *entirely* preempted—because they relate to property over and above

the trade secrets. More specifically, Plaintiff's second and fourth claims for relief are premised on Defendants' possession or use of "proprietary, confidential information," *in addition to* trade secrets. (*See* Docket No. 36, ¶¶ 50, 65 (emphasis added).)

Plaintiff misreads Judge Babcock's opinion. The only portion of the conversion claim in *Powell Products* that proceeded forward was the claim as it related to physical property. To the extent it related to intellectual property, the claim was either preempted or meritless, depending on whether the intellectual property qualified as a protectable trade secret. Here, there are no allegations that Defendants have misappropriated any drawings, plans, or other tangible property; the Amended Complaint alleges that they have misappropriated the Sealed Bearing Pack Design and the Wash Bearing Pack Design, and nothing else. Further, Plaintiff has pointed to no authority for the proposition that the Designs (or any portion thereof) are protectable by virtue of anything *other than* their potential status as trade secrets. As a result, Plaintiff's civil-theft and unjust-enrichment claims are displaced. The Court recommends that they be dismissed.

## III. Statutory Extraterritoriality

Defendants also argue that Colorado's civil-theft statute does not apply to conduct taking place outside Colorado's borders. In response, Plaintiff concedes the legal point, but argues that the conduct at issue here took place within Colorado.

Defendant has the better of the argument, at this stage of proceedings. "To succeed on his civil theft claim, [a] plaintiff ha[s] to establish that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the specific intent to permanently deprive him of the benefit of the property."

*Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009) (citing *Itin v. Ungar*, 17 P.3d 129, 134 (Colo.2000), and C.R.S. § 18–4–401(1)).  Here, Plaintiff's allegations bearing on the actual conduct meeting these elements appear in one paragraph:

> Sometime after Mr. Gallagher purchased the Designs, a former employee of Hawg Tools made available to Defendant Ficken and Newsco four parts manufactured from the Sealed Bearing Pack Design.  These four parts included two bearing adapters and two female flow restrictors.  Defendants Ficken and Newsco used the two bearing adapters and two female flow restrictors in Newsco sealed bearing packs which were manufactured using the same design that was paid for and assigned to Gallagher by Mark Tews and Defendant Joe Ficken.  Defendant Ficken and Newsco obtained these four parts from the former employee of Hawg because they knew that these parts would work in the Newsco sealed bearing packs because the Newsco sealed bearing packs were designed using the Sealed Bearing Pack Design owned by Hawg Tools.

(Docket No. 36 ¶ 29.)  The state-court complaint from the underlying litigation provides a bit more information: the "former employee" was Ed Sensenich—who worked for Plaintiff from November 2011 to February 2013, and who went to work for Defendants after that.  (Docket No. 46-1, ¶¶ 5, 10–11.)

Plaintiff is organized and headquartered in Colorado; it is reasonable to infer, for purposes of a motion to dismiss, that Sensenich's employment was also based in Colorado.  But that alone does not provide any information about whether Sensenich was located in Colorado when he actually purloined motor parts from Plaintiff's control and delivered them to Defendants.  Plaintiff's argument to the contrary focuses not on the elements of the tort but on the location of its damages: Defendants compete with Plaintiff in a national market, including in Colorado, and thereby causes harm to Plaintiff in Colorado.  (*See* Docket No. 49 p. 14.)  But where Plaintiff's damage is suffered is not

part of the extraterritoriality anaylsis. The Complaint provides no basis from which the Court could reasonably infer that *the elements of the tort* are satisfied by conduct taking place within Colorado's borders. Moreover, to the extent the theft was effectuated in other ways—for example, by Defendant Fricken's conduct in replicating ideas he previously sold to Plaintiff—the Amended Complaint is silent as to where such conduct took place.

That said, the facts as alleged might state a claim under the law of whatever jurisdiction Senenich's and Defendant Fricken's conduct did take place in. Should the District Judge reach this question, the Court recommends that Plaintiff's civil-theft claim be dismissed with leave to re-plead—under another state's law, if applicable.

### IV.     Res Judicata/Collateral Estoppel as to Civil Theft

Finally, Defendants argue that Plaintiff's attempt to assert civil theft is barred by the state-court judgment against Plaintiff on this count. (*See* Docket No. 46, pp. 12–14.) Plaintiff admits that it lost this claim once already, but argues that its can maintain a new action based on Defendants' continued wrongful possession of the stolen property. (*See* Docket No. 49, pp. 15–16.)

Plaintiff's continuing-violation theory has been rejected by this court before, in the context of the statute of limitations:

> My research reveals that Colorado recognizes the continuing tort doctrine in the context of trespass and nuisance cases. I have not found a Colorado case that applies the concept in a civil theft context.
>
> Rather, the tort of civil theft is more akin to conversion, which is defined as "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." A conversion of personal property occurs, at the latest, when a demand for its return is refused. It is not a continuing tort; damages for a conversion

> are based upon the property's fair market value at the time and place of the conversion, plus interest thereon.
>
> As such, I agree that the doctrine of continuing tort is not applicable to Plaintiff's claim for civil theft for the purpose of determining the running of the two-year statute of limitations.

*See Kelley v. New York Life Ins. & Annuity Corp.*, Case No. 07-cv-01702-LTB, 2008 WL 1782647, at *6 (D. Colo. Apr. 17, 2008) (internal citations omitted). This reasoning applies equally to Plaintiff's res judicata argument. Assuming Plaintiff has stated a claim for civil theft, it is the exact same claim stated in the previous litigation; the fact that Defendants continue to possess the property does not mean that Plaintiff accrues a new claim daily. *See Salas v. United States,* Case No. 11-cv-00784-CMA, 2012 WL 4097303, at *3 (D. Colo. Sept. 18, 2012), *affirmed on this point,* 527 F. App'x 813 (10th Cir. 2013) (stating that "the continuing tort doctrine 'does not apply to actions that are complete in themselves, rather, it applies to a continuing course of conduct, which, over time, causes injury.'").

Plaintiff does not otherwise contest that its claim is barred. And since this claim was actually litigated by the state court, with a final judgment on the merits following a full and fair opportunity to litigate the question, the Court finds that preclusion does indeed apply. *See S.O.V. v. People in Interest of M.C.*, 914 P.2d 355, 358 (Colo. 1996) (elements of res judicata and collateral estoppel). The Court therefore recommends that Plaintiff's civil-theft count be dismissed.

15

## RECOMMENDATION

For the foregoing reasons, the Court hereby RECOMMENDS that Defendants' Fed.R.Civ.P. 12(b)(2) and (6) Motion to Dismiss (Docket No. 46) be GRANTED IN PART and DENIED IN PART, as follows:

- DENIED as to Defendant Newsco International Energy Services, Inc., for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2); and

- GRANTED as to Plaintiff's Second Claim for Relief (Civil Theft) and Fourth Claim for Relief (Unjust Enrichment), for failure to state a claim under Fed.R.Civ.P.12(b)(6).

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996)**.

Dated: February 23, 2015     */s/ Michael J. Watanabe*
       Denver, Colorado                Michael J. Watanabe
                                          United States Magistrate Judge